UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC.,<br>407 East Pennsylvania Boulevard,<br>Feasterville, PA 19053 | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13-CV-0889-B |
| FREDERICK SAMBINA ALIMA,<br>Individually, and as an officer, director,<br>shareholder, and/or principal of<br>STARZZ LOUNGE, LLC d/b/a PURE<br>318 Wrotham Lane, Allen, TX 75013,<br>and<br>JOEL KYALO MUTHOKA,<br>Individually and as an officer, director,<br>shareholder, and/or principal of<br>STARZZ LOUNGE, LLC d/b/a PURE<br>318 Wrotham Lane, Allen, TX 75013, | § § § § § § § § § § § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Final Default Judgment

(doc. 17), filed on February 5, 2014. For the reasons provided below, the Motion is **GRANTED in**

**part** and **DENIED in part.**

### I.

### BACKGROUND

This is an anti-piracy case brought under the Federal Communications Act of 1934, as

amended, 47 U.S.C. §§ 553 and 605, ("FCA"). Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") is

a closed circuit distributor of sports and entertainment programming. Pl.'s Ex. B Hand Aff. 6. Joe

Hand purchased and retained the commercial exhibition rights to "The Rivals: Hopkins v. Jones II" broadcast, including all undercard bouts and the main prizefight, to be shown on April 3, 2010 (the "Event"). *Id.*; Compl. 3–4. Thereafter, Joe Hand marketed sub-licensing (commercial exhibition) rights for the Event to its commercial customers, including casinos, racetracks, bars, restaurants, and nightclubs, for a fee. Pl.'s Ex. B Hand Aff. 6–7. On April 3, 2010, Defendants broadcast the Event at their establishment, PURE, without receiving the contractual authorization from Joe Hand or paying the fee required to do so. Pl.'s Exs. B, B(2).

Joe Hand filed its Complaint on February 26, 2013, alleging that Defendants were liable for violating the Federal Communications Act and for conversion. Compl. 3–8. Although Defendants Joel Kyalo Muthoka, Frederick Sambina Alima, and Starzz Lounge, L.L.C. were served on July 15 and July 18, 2013, none answered or otherwise responded by the appropriate deadlines. *See* Docs. 11, 12, 13. Accordingly, the Clerk of Court entered a default judgment against Defendant Alima on August 23, 2013, and against Defendants Muthoka and Starzz Lounge, L.L.C. on September 3, 2013. Docs. 15, 16. Almost five months later, Joe Hand moved for default judgment. Doc. 17. To date, Defendants have failed to file a response with the Court.

## II.

### LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b). Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H Inc.*,

967 F.2d 194, 205 (5th Cir. 1992). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. *See, e.g., Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *2–3 (S.D. Tex. Oct. 5, 2011). First, the court must consider whether the entry of default judgment is appropriate under the circumstances. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

### III.

### ANALYSIS

A.    *Whether the Entry of Default Judgment is Appropriate*

In considering the six factors laid out in *Lindsey*, the Court finds they weigh in favor of granting a default judgment. Defendants have not filed any responsive pleadings in the present matter. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well

pleaded allegations of fact."). Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing his interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). In addition, there is no evidence before the Court to indicate the Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Indeed, Defendants have had more than nine months to respond to Plaintiff's Complaint and more than two months to respond to the present Motion, and still they have filed nothing to explain their reticence. *C.f. Elite v. KNR Group*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). The Defendants' total failure to respond during this time therefore mitigates the harshness of a default judgment against them. *John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*, No. 3:12–CV–4194–M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Furthermore, Joe Hand seeks only the relief to which it is entitled under the law. *Id.* Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *Lindsey*, 161 F.3d at 893. Therefore, the Court concludes that default judgment is proper.

B.    *Whether There is a Sufficient Basis for Judgment in the Pleadings*

Due to their default, Defendants are deemed to have admitted the allegations set forth in the Complaint. Nonetheless, the Court must review the pleadings to determine whether Joe Hand can establish a viable claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.").

Joe Hand alleges that Defendants "unlawfully intercepted, received, and/or de-scrambled" the Event's satellite signal and "individually, willfully, and illegally intercepted said [Event] when it was distributed and shown by cable television systems," all in violation of 47 U.S.C. §§ 553 and 605. Compl. 4, 6. Defendants then exhibited the Event "at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* 4, 6. Plaintiff further alleges that, by these acts, Defendants wrongfully converted the Event to their own use and benefit, and subjected Plaintiff to economic distress as a result. *Id.* at 7.

A person violates § 605 when he "intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Similarly, one violates § 553 by "intercept[ing] and receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization. 47 U.S.C. § 553(a)(1). The unauthorized interception of satellite or cable transmissions violates both §§ 553 and 605. *Entm't by J&J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002). The pleadings establish that the Event was transmitted via closed circuit and encrypted satellite signal, and that Defendants intercepted the Event without authorization and broadcast it to patrons at PURE for their own commercial benefit. Compl. 3–4. Joe Hand has therefore established a viable claim for relief under the Federal Communications Act.[1]

---

[1] Though Plaintiff has included a claim for conversion within its Complaint, it has only moved for default judgment with respect to the alleged violations of the Federal Communications Act. Compl. 7; Pl.'s Mot. Consequently, the Court considers only whether there is a sufficient basis in the pleadings for judgment with respect to the FCA. It should be noted, however, that "under Texas law, a tort action for conversion is limited to tangible property." *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 98 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Accordingly, it is not likely default judgment would be appropriate on this ground given the facts alleged.

C.      *Damages*

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002)). Damages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 370 (5th Cir. 1993).

A party aggrieved by a violation of § 605 may elect to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i).[2] Statutory damages for each violation of the section must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court finds just. *Id.* § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, increase the damage awarded by an amount of not more than $100,000. *Id.* § 605(e)(3)(C)(ii). An aggrieved party who prevails shall receive full costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii).

1.      Statutory Damages

Joe Hand seeks statutory rather than actual damages and asks for an award of $10,000, the statutory maximum, against Defendants. Pl.'s Br. 8. Joe Hand argues that "it would be impossible to

---

[2] Although Defendants likely violated both §§ 553 and 605, Joe Hand cannot recover under both provisions. *Al-Waha Enters.*, 219 F. Supp. 2d at 775. The Court will therefore focus only on the award of damages under § 605 because it allows for greater recovery by Joe Hand. *Id.*

determine the full extent of the profits" it lost and the additional damages sustained as a result of Defendants' unlawful actions. *Id.* at 9. In addition, Joe Hand claims it is entitled to "additional compensation as it has been deprived of the 'value, benefits and profits derived' from the unauthorized broadcast" of the Event at PURE, "as well as the value of 'business investment, business opportunities and goodwill.'" *Id.* at 12 (quoting *Am. Television and Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)). To support its claim for damages, Joe Hand offers an affidavit from its president. Pl.'s Ex. B Hand Aff. In addition, Joe Hand explains how Defendants' actions threaten the company's existing and ongoing viability. Pl.'s Br. 12. Because unauthorized establishments offer stolen programming for no fee or a fee less than what the authorized establishments are required to charge, lawful customers lose patrons and are unable or unwilling to contract with Joe Hand to sublicense their broadcasts. *Id.* What's more, the viewers who watch the illegally broadcast material might otherwise have attended lawful establishments and thereby bolstered the value of programming like the Event. Pl.'s Br. 12–13. Ultimately, Joe Hand argues that piracy such as Defendants' causes the company to suffer damage to its goodwill, reputation, and right and ability to control and receive fees for transmission of features. *Id.* at 13.

Courts have assessed various amounts in statutory damages for violations similar to those presented here. *See J & J Sports Prods., Inc. v. Beck*, No. L–13–57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (slip copy) (awarding base statutory damages in the amount of $5,000); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10–CV–2006–L, 2012 WL 215282, at *1 (N.D. Tex. Jan. 25, 2012) (awarding base statutory damages of $10,000); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding base statutory damages of $5,000). Taking into account the need to deter future violations and the fact that the sublicensing fee here would have been approximately $1,100–1,200 had

Defendants actually paid to broadcast the Event, the Court finds that statutory damages in the amount of $5,000 is reasonable. *See* Pl.'s Ex. B(3) Rate Card; *see, e.g., Al-Waha Enters.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA].").

> ## 2. Additional Damages

Joe Hand also seeks $50,000 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), as it alleges Defendants' actions were willful and for "purposes of direct or indirect commercial advantage or private financial gain." Pl.'s Br. 14 (internal quotation marks omitted). Joe Hand offers no evidence to directly show that Defendants willfully violated the FCA, but insists that Defendants "could not have 'innocently' accessed the broadcast of the Event" given the complexity of intercepting transmissions. *Id.* at 14–15. Courts have generally found this reasoning to be persuasive given the limited means by which defendants can access closed-circuit, pay-per-view events and the unlikelihood that an establishment could intercept such broadcasts by chance. *See Al-Waha Enters.*, 219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Q Café, Inc.*, 2012 WL 215282, at *5 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). The Court similarly finds that the evidence and allegations here are sufficient to support a finding of willfulness. Further, it is clear that Defendants intercepted the Event

"for purposes of direct or indirect commercial advantage or private financial gain," as they charged a cover fee to enter PURE the night of the Event. Pl.'s Ex. B(2) Piracy Aff. Joe Hand is therefore entitled to additional damages under the statute.

Although the FCA allows for additional damages in an amount not greater than $100,000 for willful violations, 47 U.S.C. § 605(e)(3)(C)(ii), courts have varied in their approaches to determining the proper amount to award in cases similar to the one at bar. *See, e.g., Q Café, Inc.*, 2012 WL 215282, at *5 (awarding additional damages in the amount of five times the statutory base award, citing the location of the broadcast in an urban area and the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding additional damages in the amount of three times the base because defendant did not charge a cover charge, only 30 patrons viewed the event, and defendant was not a repeat offender); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding triple damages for a willful violation); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001)(awarding five times the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). Here, Joe Hand has submitted evidence that Defendants charged a $5 cover and showed the Event on nine screens, including eight television sets and one projection screen.  Pl.'s Ex. B(2) Piracy Aff. In addition, Joe Hand's evidence shows that approximately 85 to 125 people were at PURE while the Event was being shown. *Id.* Though there is little guidance how the Court should weigh certain factors when calculating additional damages, many courts have applied a multipliers of three to five when faced with a defendant who broadcast an event willfully for his own commercial benefit. *See, e.g., Kingston Pay-Per-View, Ltd.*, 146 F. Supp. 2d at 960 (using multiple of five); *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 (using a multiples of three and four for defendants). In light of this

authority, the evidence currently before the Court, and the need to deter future violations, the Court finds that additional damages equal to four times the base statutory damages is reasonable. Thus, the Court awards Joe Hand $20,000 in additional damages.

> 3.    Attorneys' Fees and Costs

Under the FCA, the Court is required to order the recovery of full costs, including attorneys' fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Joe Hand seeks attorneys' fees or, alternatively, a one-third contingent fee. Pl.'s Br. 19. In her affidavit, Joe Hand's counsel estimates her fee to be $3,575 for her time and work in this case. Pl.'s Ex. D King Aff. This is based on a blended rate of $250 per hour and approximately 14.3 hours of work. *Id.* Given this estimate as well as the evidence and circumstances of the case, the Court finds Joe Hand's request for $3,575 to be more reasonable than a one-third contingency fee.

The Fifth Circuit has described the procedure and standard for determining attorneys' fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or

contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

Although Joe Hand has not offered any invoices or other evidence substantiating the number of hours its attorney worked on this case, the Court accepts as reasonable Ms. King's estimates of her time and rates given her experience with anti-piracy cases as well as the authorities she provides. Pl.'s Exs. D King Aff; D(1) Attorney Billing and Compensation Survey; D(2) Texas Lawyer 2009 Salary and Billing Survey. Accordingly, the Court makes no adjustment to these figures and awards Joe Hand $3,575 in attorneys' fees.

The Court further awards Joe Hand $675 in costs, which reflect $350 in filing fees for the Complaint and $325 in service of process fees. Pl.'s Ex. D(3) Service of Process Invoices.

4.    Permanent Injunction

Joe Hand also seeks a permanent injunction against Defendants to prevent them "from ever intercepting or exhibiting an unauthorized program in violation of the Federal Communications Act." Pl.'s Br. 19. Under the FCA, a court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i). However, Joe Hand fails to explain why the Court should provide such relief here. Further, the Court finds such an injunction is unnecessary to the extent it is simply to prevent Defendants from violating the law. The Court therefore **DENIES** Joe Hand's request for a permanent injunction.

IV.

CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Joe Hand's Motion for Final Default Judgment (doc. 17). In particular, the Court

- **GRANTS** Joe Hand's requests for statutory damages in the amount of **$5,000** and for additional damages in the amount of **$20,000**, for a total award of **$25,000.**;

- **GRANTS** Joe Hand's requests for awards attorneys' fees in the amount of **$3,575** and costs of court in the amount of **$675.**;

- **GRANTS** Joe Hand's request for post-judgment interest at a rate of 0.11% on all amounts awarded herein.; and

- **DENIES** Joe Hand's request for a permanent injunction.


SO ORDERED.

SIGNED: April 22, 2014.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 12 -